UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

THREE NICKELS, LLC,                                    Chapter 11
                                                       Case No. 23-41456 (JMM)

                            Debtor.
--------------------------------------------------------x

### DISCLOSURE STATEMENT IN CONNECTION WITH CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL *BUT HAS NOT YET BEEN APPROVED BY THE COURT.***

**PICK & ZABICKI LLP**
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.

*Counsel to the Debtor*

# I. SUMMARY

Three Nickels LLC, the debtor and debtor-in-possession herein (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all of its known Creditors, Interest Holders and other parties in interest for the purpose of soliciting acceptances of its proposed Chapter 11 Plan of Reorganization (the "Plan"). The Plan has been filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") and a copy of the same is attached hereto as **Exhibit "A"**. By Order dated _____, 2023, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtor's Creditors to make an informed decision whether to accept or reject the Plan.

**The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy estate and the anticipated recovery by Creditors of the Debtor.**

A finding by the Bankruptcy Court that the Disclosure Statement contains adequate information pursuant to §1125 of the Bankruptcy Code does not mean, indicate or imply in any manner that the Bankruptcy Court recommends either an acceptance or a rejection of the Plan by a party eligible to vote thereon.

A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.

## A. THE PLAN

The Debtor is the owner of certain real property located at 555 Ocean Avenue, Brooklyn, New York Block 501, Lot 17 (the "Property"). The Property consists of an approximately 135' x 210' lot with a six (6) floor, eighty-five (85) unit, residential apartment building situated thereon. The Property is presently encumbered by, at a minimum: (a) a first priority mortgage lien in favor of Ocean Lender LLC (the "Ocean Lender") securing amounts which the Lender asserts totaled approximately $14,300,000 as of July 7, 2023 (and purportedly accruing interest at the contract "default rate" of 24%, *i.e.*, $8,717 per day); (b) secured real property taxes owed to the New York City Dept. of Finance in the asserted amount of approximately $280,585; and (c) secured obligations owed to the New York City Water Board in the asserted amount of $104,040. As additional security, Ocean Lender also holds an assignment of all leases and rents associated with the Property. The Debtor is also a party to a cash advance agreement with LG Funding LLC pursuant to which LG Funding was granted a security interests in certain receivables. The Debtor's unsecured debts are believed to total approximately $118,430. The Debtor estimates that the current fair market value of the Property is approximately $14,000,000 to $15,000,000. Rental arrears having a book value of approximately $570,000 were owed to the Debtor as of the Petition Date, almost all of which is substantially aged.

1

As more fully discussed herein, the Plan contemplates: (a) the Debtor's surrender of the Deed to the Property to Ocean Lender on the Effective Date; (b) the retention by the New York City Dept. of Finance and the New York City Water Board of their respective Liens against the Property; (c) the retention by LG Funding LLC of its Lien against any property of the Estate which serves as its collateral; (d) the distribution of the Available Cash on hand with the Debtor as of the Effective Date (presently estimated to total approximately $275,000) to pay Statutory Fees, Administrative Claims and Priority Tax Claims in full and a Pro Rata Distribution of any funds remaining thereafter to holders of General Unsecured Claims; and (e) the cancellation of the (equity) Interests in the Debtor on the Effective Date. Given the extent of the obligations secured by the Property and other assets of the Estate, any sale, collection or other liquidation efforts with respect thereto would fail to yield a recovery sufficient to satisfy the Secured Claims. Accordingly, the Debtor believes that the Plan represents the only potential means by which unsecured creditors will receive any recovery on their Claims.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below are the Debtor's best current estimate of the aggregate amount of Claims and Interests in the Case. These estimates are based upon an analysis of the Schedules filed by the Debtor, proofs of claim filed by Creditors to date, and certain other documents of public record. As more fully discussed below, the Bar Date for the filing of proofs of claim on account of pre-Petition Date obligations of the Debtor has not yet passed. As such, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below.

| Class and Estimated Amount | Type of Claim or Interest | Summary of Treatment Under Plan |
| --- | --- | --- |
| **Unclassified –** Unknown | Statutory Fees | All fees and charges payable to the United States Trustee, including those owed under 28 U.S.C. §1930(a)(6) and any applicable interest thereon, including any applicable interest, shall be fully paid. Such fees and charges that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date. Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due until the entry of a final decree closing the Case, or until the Case is converted or dismissed, whichever occurs earlier. |
| **Unclassified –** $75,000 (Estimated) | Administrative Claims | Each holder of an Allowed Administrative Claim shall receive the full amount of its Allowed Administrative Claim: (a) in Cash on the Effective Date or as soon thereafter as is reasonably practicable; or (b) on such other terms as mutually agreed to by the holder of an Allowed Administrative Claim. |

| Class and Estimated Amount | Type of Claim or Interest | Summary of Treatment Under Plan |
|---|---|---|
| **Unclassified –** $0 (Estimated) | Priority Tax Claims | Each holder of an Allowed Priority Tax Claim will receive on account of such claim the full amount of its Allowed Priority Tax Claim, with interest at the applicable rate, in Cash on the Effective Date or as soon thereafter as is reasonably practicable.[1] |
| **Class 1 –** $280,585 (Estimated) | NYC Tax Secured Claim | **Unimpaired.** The New York City Department of Finance, as the holder of the Allowed NYC Tax Secured Claim in Class 1, will retain its Lien against the Property securing said Claim post-Confirmation. |
| **Class 2 –** $104,040 (Estimated) | NYC Water Secured Claim | **Unimpaired.** The New York City Water Board, as the holder of the Allowed NYC Water Secured Claim in Class 2, will retain its Lien against the Property securing said Claim post-Confirmation. |
| **Class 3** $14,300,000 (Estimated) | Ocean Lender Secured Claim | **Impaired.** In full settlement of the Allowed Ocean Lender Secured Claim in Class 3, Ocean Lender will receive the Deed to the Property on the Effective Date and any deficiency between the value of the Property and the Allowed Amount of the Ocean Lender Secured Claim shall be treated as a Class 5 General Unsecured Claim. |
| **Class 4** Unknown | LG Funding Secured Claim | **Unimpaired.** LG Funding, as the holder of the Allowed LG Funding Secured Claim in Class 4, will retain its Lien against the assets, if any, of the Estate securing said Claim post-Confirmation. |
| **Class 5 –** $118,430 (Estimated) | General Unsecured Claims | **Impaired.** Each holder of an Allowed Class 5 General Unsecured Claim will receive a Pro Rata Distribution of any Available Cash remaining after full payment of all Statutory Fees, Administrative Claims and Priority Tax Claims on the Effective Date. |
| **Class 6** N/A | Interests | **Unimpaired.**  All Interests in the Debtor will be cancelled on the Effective Date. |

## B.  CONFIRMATION OF THE PLAN

The Bankruptcy Court has scheduled a virtual hearing to consider the Debtor's request for Confirmation of the Plan to be held on _____, **2023 at _____ a.m./p.m. Prevailing Eastern Time** before the Honorable Jill Mazer-Marino, United States

---

[1] The Debtor does not believe that any Priority Tax Claims exist or will otherwise be asserted.

Bankruptcy Judge. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served so as to be received on or before **_____, 2023 at 5:00 p.m. Prevailing Eastern Time** in the manner described below under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the requirements of §1129(a) of the Bankruptcy Code have been satisfied with regard to the Plan, in which event the Bankruptcy Court may enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. The Debtor believes that the Plan satisfies all applicable requirements of §1129(a) and §1129(b) of the Bankruptcy Code. See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors and other parties regardless of whether they have accepted the Plan.

### C.  VOTING INSTRUCTIONS – SUMMARY

The following discussion summarizes the more detailed voting instructions set forth in the Section of this Disclosure Statement entitled "VOTING INSTRUCTIONS." If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" Section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General.** The Debtor has sent a ballot with voting instructions and a copy of this Disclosure Statement to all of the Debtor's known Creditors, who are in Classes impaired under the Plan and are entitled to vote to accept or reject the Plan. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan. Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and more than one-half in number of claims in each impaired Class who actually vote on the Plan, and (b) the holders of two-thirds in amount of equity security interests in each impaired class of interests who actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the Class or classes rejecting it, and (ii) at least one impaired Class of Claims has accepted the Plan determined without considering the acceptance of any insider. See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confiʳmation" and "EFFECT OF CONFIRMATION."

**As evidenced by the preceding paragraph, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan. YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT. Creditors should exercise their right to vote to accept or reject the Plan.**

4

**Voting Multiple Claims and Interests.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim or Interest in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots.** The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be actually <u>received</u> by counsel to the Debtor by not later than **5:00 p.m. Prevailing Eastern Time, on _____, 2023**, at the following address:

> Pick & Zabicki LLP
> 369 Lexington Avenue, 12th Floor
> New York, New York 10017
> Attn: Douglas J. Pick, Esq.

**Voting Questions.** If you have any questions regarding the provisions or requirements for voting on the Plan or require assistance in completing your ballot, you may contact the Debtor's counsel, Douglas J. Pick, Esq. at (212) 695-6000.

### D. NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Debtor to its known Creditors and Interest holders pursuant to §1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Plan. The Plan is incorporated herein by reference.

The purpose of this Disclosure Statement is to enable you, as a Creditor or Interest Holder to make an informed decision in exercising your right to accept or reject the Plan and/or to object to Confirmation of the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

**THIS DISCLOSURE STATEMENT IS NOT A SOLICITATION FOR CAPITAL CONTRIBUTIONS TO THE DEBTOR FROM ANY ENTITY.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE**

**ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared by the Debtor to the best of its knowledge and belief and based upon information available to the Debtor such as filings made with the Bankruptcy Court and other courts and the Debtor does not vouch for its accuracy. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.

In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."

No statements or information concerning the Debtor or its assets, future business operations, results of operations or financial condition, are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to make an informed decision about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement and all exhibits hereto (including the Plan) before casting a ballot. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and §1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its businesses or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## II. RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors and Interest Holders under the Plan provides a greater possible recovery than is likely to be achieved under any other alternatives including liquidation under Chapter 7 of the Bankruptcy Code. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in a Chapter 7 liquidation, Administrative Expenses may not be paid and other than to the Secured Creditors, no creditor would receive any distributions on account of its Allowed Claim.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS, AND URGES EACH CREDITOR ENTITLED TO VOTE TO ACCEPT THE PLAN.**

## III. EVENTS LEADING TO CHAPTER 11

The Debtor is a New York limited liability company formed on March 27, 2007. The Debtor's sole member if Daniel Reifer.

The Debtor acquired title to the Property by deed dated October 17, 2007. Substantially all of the apartment units withing the Property are rented. Other than its ownership and management of the Property, the Debtor has no other significant assets or business operations.

On or about June 27, 2022, Ridgewood Savings Bank assigned a certain consolidated mortgage note in the original total principal amount of $11,250,000 (the "Note"), along with a first priority mortgage against the Property (the "Mortgage"), an assignment of all leases and rents associated with the Property and the personal guaranty of Mr. Reifer securing payment thereunder, to Ocean Lender. The following day, Ocean Lender accelerated payment of all sums due under the Note and demanded immediate payment thereof. Nine (9) days later on July 7, 2022, and after payment was not received as demanded, Ocean Lender commenced an action in the Supreme Court of the State of New York, County of Kings, entitled *Ocean Lender LLC v. Three Nickels, LLC, et al.* (Index No. 519258/2022) seeking to foreclose on the Mortgage against the Property (the "Foreclosure Action").

In October 2022, the Debtor and the Lender entered into a Stipulation of Settlement pursuant to which, among other things, the Lender agreed to forebear from taking further action to foreclose upon the Mortgage conditioned upon, among other things, the Debtor's payment to the Lender of certain specified installment payments against the mortgage arrears. Unfortunately, the Debtor was not able to remain current with respect to its obligations under the Stipulation of Settlement. A Judgment of Foreclosure and Sale was entered on April 21, 2023 (the "Foreclosure Judgment").

On April 27, 2023 (the "Petition Date"), and in order to stay further proceedings in the Foreclosure Action, as well as other collection efforts by the Debtor's creditors, while the Debtor pursued a market sale of the Property, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtor subsequently filed its

7

Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs (the "Schedules") with the Bankruptcy Court pursuant to Rule 1007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor remains in possession of its property and continues to operate and manage its business and affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No committee, trustee or examiner has been appointed with regard to the Debtor's case. The Debtor's Case is a "single asset realty" case within the purview of §101(51B).

## IV. SIGNIFICANT EVENTS IN THE CASE

### A. Retention of Professionals

Section 327(a) of the Bankruptcy Code provides that a debtor in possession or a trustee, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the debtor in carrying out its duties under the Bankruptcy Code.

The Debtor has filed (or shortly will be filing) applications with the Bankruptcy Court seeking authority to retain: (a) Pick & Zabicki LLP as its general bankruptcy counsel to the Debtor; (b) Buchbinder Tunick & Co. as its accountants; and (c) Maltz Auctions as its marketing and sales agent with respect to the Property.

### B. Claim-Related Matters

On June 6, 2023, and upon the Debtor's application, the Bankruptcy Court entered an Order (the "Bar Date Order") establishing dates by which any proofs of claim on account of pre-Petition Date obligations must be filed (the "Bar Date"). Pursuant to the Bar Date Order, proofs of claim on account of pre-Petition date obligations of the Debtor are required to be filed by non-governmental entities by not later than July 12, 2023 and by governmental agencies by not later than October 24, 2023. A notice of the Bar Date was mailed to all known or potential creditors of the Debtor.

A total of four (4) Proofs of Claim were filed prior to the Bar Date as follows: (a) Proof of Claim No. 1 filed by the Internal Revenue Service asserting a General Unsecured Claim in the amount of $700.00 on account of estimated partnership tax obligations; (b) Proof of Claim No. 2 filed by Ocean Lender asserting a Secured Claim in the amount of $14,300,000.00 allegedly owed by the Debtor under the Foreclosure Judgment; (c) Proof of Claim No. 4 filed by the New York City Water Board asserting a Secured Claim in the amount of $104,040.75 on account of water charges allegedly due in connection with the Property; and (d) Proof of Claim No. 5 filed by the New York City Dept. of Finance asserting a Secured Claim in the amount of $280,586.85 on account of real property taxes allegedly due in connection with the Property At this time, the Debtor does not anticipate the filing of any objections to any Proofs of Claim, provided however that the Debtor reserves the right to object to any Proof of Claim that may subsequently be filed in accordance with the Plan.

### C.  Motion for Relief From the Automatic Stay

On July 7, 2023, Ocean Lender filed  a motion with the Bankruptcy Court seeking entry of an Order modifying the automatic stay arising in this case with regard to Ocean Lender's interests, rights and remedies in the Property, including enforcement of the Foreclosure Judgment.  The Debtor has or will be filing opposition papers with respect to said motion.  A hearing thereon is presently scheduled to be held on August 2, 2023.

## V. SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, which is incorporated herein by reference.

### A. CLASSIFICATION OF CLAIMS AND INTERESTS

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into three classes of Claims and one class of Interests:

| | |
|---|---|
| Class 1 - | NYC Tax Secured Claim |
| Class 2 - | NYC Water Secured Claim |
| Class 3 - | Ocean Lender Secured Claim |
| Class 4 - | LG Funding Secured Claim |
| Class 5 - | General Unsecured Claims |
| Class 6 - | Interests |

As set forth in Article 2 of the Plan, pursuant to §1123(a)(1) of the Bankruptcy Code, Administrative and Priority Tax Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims.

**Class 1 – NYC Tax Secured Claim.** Class 1 consists of the Allowed Secured Claim, if any, held by the New York Dept. of Finance secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, in the asserted amount of $280,586.85.  Class 1 is not impaired under the Plan.

**Class 2 – NYC Water Secured Claim.** Class 2 consists of the Allowed Secured Claim, if any, held by the New York City Water Board secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, in the asserted amount of $104,040.75.  Class 2 is not impaired under the Plan.

**Class 3 – Ocean Lender Secured Claim.** Class 3 consists of the Allowed Secured Claim, if any, held by Ocean Lender secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, in the asserted amount of $14,300,000.00.  Class 3 is impaired under the Plan.

**Class 4 – LG Funding Secured Claim.** Class 4 consists of the Allowed Secured Claim, if any, held by the LG Funding LLC secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, in an unknown amount. Class 4 is not impaired under the Plan.

**Class 5 - General Unsecured Claims.** Class 5 consists of any and all Allowed Claims against the Debtor other than Statutory Fees, Administrative Claims, Priority Tax Claims, or Secured Claims.  The Debtor estimates that any other Allowed Class 5 General Unsecured Claims total approximately $120,000.00 not including the unsecured deficiency portion of any Secured Claims.

**Class 6 - Interests.** Class 6 consists of all equity Interests in the Debtor, all of which are held by Daniel Reifer.  Class 6 is  impaired under the Plan.

## B. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Articles 4 and 5 of the Plan provide for the treatment of impaired and unimpaired Claims and Interests classified in Article 3 of the Plan as follows:

**Class 1 – NYC Tax Secured Claim.**  The New York City Department of Finance, as the holder of the Allowed NYC Tax Secured Claim in Class 1, will retain its Lien against the Property securing said Claim post-Confirmation.

**Class 2 – NYC Water Secured Claim.**  The New York City Water Board, as the holder of the Allowed NYC Water Secured Claim in Class 2, will retain its Lien against the Property securing said Claim post-Confirmation.

**Class 3 – Ocean Lender Secured Claim.**  In full settlement of the Allowed Ocean Lender Secured Claim in Class 3, Ocean Lender will receive the Deed to the Property on the Effective Date and any deficiency between the value of the Property and the Allowed Amount of the Ocean Lender Secured Claim shall be treated as a Class 5 General Unsecured Claim.

**Class 4 – LG Funding Secured Claim.**  LG Funding, as the holder of the Allowed LG Funding Secured Claim in Class 4, will retain its Lien against the assets, if any, of the Estate securing said Claim post-Confirmation.

**Class 5 - General Unsecured Claims.**  Each holder of an Allowed Class 5 General Unsecured Claims will receive a Pro Rata Distribution of any Available Cash remaining after full payment of all Statutory Fees, Administrative Claims and Priority Tax Claims on the Effective Date.

**Class 6 – Interests.** All Interests in the Debtor will be cancelled on the Effective Date.

### C. TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to §1123(a)(l) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under §507(a)(1) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Statutory Fees.** The Debtor has a statutory duty to pay all outstanding amounts that may be due to the United States Trustee upon Confirmation, together with any fees due pursuant to 28 U.S.C. §1930(a)(6) and any applicable interest thereon, through the date of the entry of a final decree closing the Case, conversion of the case to chapter 7 or dismissal of the case. All fees and charges payable to the U.S. Trustee, including any applicable interest, shall be fully paid. Such fees and charges that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date. Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due until the entry of a final decree closing the Case, or until the Case is converted or dismissed, whichever occurs earlier.

**Administrative Claims.** Administrative Claims are defined as the costs and expenses of administration of the Case, allowable under §503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under §330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each Administrative Claim, to the extent not previously paid, shall be paid in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

Other than Professional Fees, the Debtor does not believe that any Administrative Claims exist or will otherwise be asserted.

**Professional Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained in a case under the Bankruptcy Code. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to §330 of the Bankruptcy Code no later than sixty (60) days

following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtor and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving an application, the fees shall be paid within three (3) days thereafter or in accordance with this Plan or as otherwise agreed to by the Professional and the Debtor.

**Priority Tax Claims.** Generally, Priority Tax Claims are (subject to certain timing and date of assessment limitations) unsecured claims of "governmental units" (as defined in the Bankruptcy Code) based upon: (a) taxes measured by income or gross receipts; (b) property taxes; (c) withholding taxes; (d) employment taxes; (e) excise taxes; (f) customs duties; and (g) penalties based on actual pecuniary losses relating to the foregoing. These Priority Tax Claims include, among others, all taxes measured by income or gross receipts attributable to the three-year period immediately preceding the Petition Date (*i.e.*, from August 24, 2018 through the Petition Date).

The Debtor does not believe that any Priority Tax Claims exist or will otherwise be asserted. Nevertheless, the Plan provides that, in full satisfaction, release and discharge, the holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date or as soon thereafter as is reasonably practicable.

### D. DISPUTED CLAIMS AND INTERESTS

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor or its estate by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event after the later to occur of (i) sixty (60) days following the Bar Date, (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

**Prosecution of Objections.** After the Effective Date, the Debtor, only, shall have authority to settle, compromise, withdraw or resolve objections to Claims.

**Disallowance.** Except as provided in Section 6.1 of the Plan, any Disputed Claim for which no Proof of Claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

### E. DISTRIBUTIONS UNDER THE PLAN

Article 8 of the Plan contains provisions governing the making of distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within five days following the

later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to Disputed Claims or Interests or (iii) such other times provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check or wire transfer drawn on a domestic bank.

**Disbursing Agent.** The Debtor's counsel (Pick & Zabicki LLP) shall be the Disbursing Agent to make distributions under the Plan. Pursuant to the terms of the Plan, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Disbursing Agent shall not be liable for any distributions made in accordance with the Plan. The Disbursing Agent shall not be liable to the Debtor, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents. The Disbursing Agent will not be bonded. The Debtor is advised that Pick & Zabicki, LLP has insurance coverage presently in effect in an amount sufficient to fully cover any improper loss or diminishment in the amounts being held in escrow; provided however that said insurance does not cover any intentional misappropriation (*e.g.*, embezzlement, larceny, etc.) by any member of Pick & Zabicki, LLP.

Distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of the Plan.

## F. UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall be reallocated to those Creditors with Allowed Claims if it is not claimed by the Entity entitled thereto before the later of (i) three (3) months after the Effective Date or (ii) thirty (30) days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

## G. DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim or Interest, no distribution under the Plan will be made to the holder of such Claim or Interest. There will be set aside and reserved on behalf of such Disputed Claim or Interest, however, such cash or property

as the holder thereof would be entitled to receive in the event such Claim or Interest was an Allowed Claim or an Allowed Interest on the date of such distribution. On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to §§503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax and (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to §§503 and 507 of the Bankruptcy Code). The Disbursing Agent may also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

Within ten (10) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or property, including any interest, dividends or proceeds thereof, to which a holder is then entitled, if any, with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by §345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds other than for liability for the violation of federal securities laws or any related regulations promulgated thereunder by the Securities and Exchange Commission and/or Financial Industry Regulatory Authority.  The Disbursing Agent could be liable to the Debtor if its conduct or acts are determined to be fraudulent, criminal, or *ultra vires*, or if there is a disclosure of confidential information that causes damage to the Debtor.  Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### H. COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under §1146 of the Bankruptcy Code.

## I.   EFFECTIVE DATE

The Effective Date of the Plan is defined to mean the later of: (i) one (1) Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by the Plan to waive such condition.

## J.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under §365 of the Bankruptcy Code, a debtor has the right, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Although not defined in the Bankruptcy Code, an "executory contract" is usually described as a contract under which material performance (other than the payment of money) is due by each party. If an executory contract or unexpired lease is rejected under §365 of the Bankruptcy Code, the "rejection" is treated as a breach of the contract or lease prior to the Petition Date giving rise to a pre-petition unsecured claim. In addition, "rejection" damages are limited in certain contexts under §502 of the Bankruptcy Code. If an executory contract or unexpired lease is assumed, the Debtor has the obligation to cure any default and to perform its obligations thereunder in accordance with the terms of such agreement.

As of the Effective Date all Unexpired Leases with tenants of the Property, shall be deemed assumed by the Debtor and assigned to the Successful Bidder, in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code. All other Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be deemed rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code.

## K.   IMPLEMENTATION

In furtherance of implementation of this Plan, on the Effective Date, the Debtor shall: (a) surrender the Deed to the Property to Ocean Lender in full satisfaction of the Allowed Ocean Lender Secured Claim; and (b) shall distribute the Available Cash, first in full payment of any Statutory Fees, second in payment of any Allowed Administrative Claims, third in payment of any Allowed Priority Tax Claims, and fourth and lastly Pro Rata to the holders of Allowed General Unsecured Claims. Except as set forth elsewhere in this Plan all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from the Available Cash.

## L.   OBJECTIONS TO AND ESTIMATION OF CLAIMS

From and after the Effective Date, the Debtor shall be the sole representative of the Estate with regard to objections to Claims. Under the Plan, the Debtor may continue to prosecute any objection to any Claim filed prior to Confirmation after the Effective Date. Any Claim subject to an objection which has not been adjudicated by Final Order or otherwise

15

resolved prior to Confirmation will be treated as a Disputed Claim under the Plan. Any further objections to Claims shall be filed by the Debtor no later than ninety (90) days after the Effective Date, which deadline may be extended by the Court upon motion of the Debtor without notice. In the event that any Proof of Claim is filed, asserted or amended after the Effective Date, the Debtor shall have ninety (90) days from the date of such filing or notice to object to such Claim, which deadline may be extended by the Court upon motion of the Debtor without notice. All objections shall be litigated to Final Order. The Plan reserves the right of the Debtor to compromise, settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections to Claims.

Under the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted method.

## M.    CAUSES OF ACTION

Except as otherwise provided in the Plan, any and all Causes of Action[2] shall remain assets of the Estate pursuant to §1123(b)(3)(B) of the Bankruptcy Code on the Effective Date. Pursuant to §1123(b)(3)(B) of the Bankruptcy Code, only the Debtor, or the Post-Confirmation Debtor, as the case may be, shall have the right to pursue or not to pursue, or, subject to the terms of the Plan, compromise or settle Causes of Action owned or held by the Debtor and/or its Estate as of the Effective Date. From and after the Effective Date, the Debtor may commence, litigate, and settle any Causes of Action or rights to payment or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Debtor after the Effective Date, except as otherwise expressly provided in the Plan. Other than as set forth herein, no other Person may pursue such Causes of Action after the Effective Date. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action whether commenced prior to or after the Effective Date. The benefits, if any, whether in the form of monetary recoveries, setoffs, recoupments, defenses and the like, of all Causes of Action shall inure to the benefit of the Debtor and not any creditors.

---

[2] "Causes of Action" is defined in the Plan as " all claims, actions, third-party claims, counterclaims and crossclaims (including, without limitation, an avoidance, recovery, or subordination actions against insiders and/or any other Entity under §§510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code) in favor of the Debtor and/or the Estate existing on the Effective Date against any Entity based in law or equity, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order and expressly including, without limitation, any and all claims or potential claims against Dafnonas Estates, Ltd."

## N.      MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor, at any time before the substantial consummation of the Plan, as provided in §§1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements of §§1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if a proponent files modifications to a plan, pursuant to §1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of §1127(a); however, the proponent of a modification to a plan must comply with §1125 of the Bankruptcy Code with respect to the plan as modified. In other words, if a modification materially alters the treatment of any Creditor or Interest Holder who has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors or Interest Holders whose treatment has been materially and adversely altered and give such Creditors or Interest Holders an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## O.      RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

## P.  RISK FACTORS

In the event that the Lender is the Successful Bidder for the Property with a credit bid, the Lender's Cash Contribution will likely be the only source of funding for the distributions and other amounts proposed to be paid under the Plan.  As reflected above, any available funds will be distributed to Creditors and Interest Holders under the Plan in accordance with statutory priorities.  In order to confirm the Plan, the Debtor will be required to satisfy all Statutory Fees, Administrative Claims, Priority Tax Claims and Secured Claims on the Effective Date of the Plan (or on terms otherwise agreed to between the holders of such Claims and the Debtor).  Although the Debtor presently anticipates that the Lender's Cash Contribution will be sufficient to fully satisfy such Claims, and that the remainder of the Lender's Cash Contribution will be sufficient to fund a Pro Rata distribution on General Unsecured Claims of at least 85% of the amounts

thereof, the recovery by holders of General Unsecured Claims might ultimately be less than that as a result of, among other things, the unanticipated accrual of Administrative Claims, Secured Claims or other Claims that have priority over General Unsecured Claims.

In any event, and as more fully discussed below in the section titled "Best Interest Test", the Debtor believes that confirmation of the Plan is the best available alternative for its Creditors and Interest holders to recover maximum value on their Claims and Interests as they are unlikely recover anything in the event that the Plan is not confirmed.

## VI. VOTING INSTRUCTIONS

A Creditor or Interest Holder who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement. See "VOTING INSTRUCTIONS -- Who May Vote." The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

### A.  DEADLINE FOR RECEIPT OF BALLOTS

The solicitation period for votes accepting or rejecting the Plan will expire at **5:00 p.m., Prevailing Eastern Time, on _____, 2023** (the "Voting Deadline"). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

### B.  BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by the Voting Deadline, to:

> Pick & Zabicki LLP
> 369 Lexington Avenue, 12th Floor
> New York, New York 10017
> Attn: Douglas J. Pick, Esq.

(the "Balloting Agent"). A Creditor or Interest Holder entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Douglas J. Pick, Esq. at (212) 695-6000 to receive a replacement Ballot.

### C.  WHO MAY VOTE - IN GENERAL

The Allowed NYC Tax Secured Claim in Class 1, the Allowed NYC Water Secured Claim in Class 2 and the Allowed LG Funding Secured Claim in Class 3 are not impaired and, thus, are assumed to have accepted the Plan. The Allowed Lender Secured Claim in

Class 3 and the Allowed General Unsecured Claims in Class 5 are impaired and, as such, are entitled to vote to accept or reject the plan.  The Interests in Class 6 are impaired and are assumed to have rejected the Plan.

**Ballots Executed in a Representative or Fiduciary Capacity.** Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims and Interests.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim or Interest in one particular Class will be deemed to hold only a single Claim or Interest in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

## D.    DEFECTS OR IRREGULARITIES

**ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE NEITHER AN ACCEPTANCE NOR A REJECTION OF THE PLAN AND SHALL BE DEEMED NOT TO HAVE BEEN CAST.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Neither the Debtor, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

**E.    REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS**

Any Creditor who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim represented by such Claim, (ii) be signed by the Creditor as the case may be, in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## VI. ACCEPTANCE AND CONFIRMATION

### A.  CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan.   The virtual Confirmation Hearing is scheduled to commence on _____, **2023 at ____  a.m. Prevailing Eastern Time** before the Honorable Jill Mazer-Marino, United States Bankruptcy Judge via Zoom for Government.

All participants (including attorneys, clients, and pro se parties) are required to register their appearances through the Bankruptcy Court's eCourt Appearances program, by following the    instructions   set    forth    on    the    Bankruptcy    Court's    website,    at https:www/nyeb.uscourts.gov/content/judge-nancy-hershey-lord.

The Combined Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Combined Hearing.

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served so as to be received **on or before _____, 2023 at 5:00 p.m. Prevailing Eastern Time** by: (i) Pick & Zabicki, LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.; and (ii) the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

### B.  REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of §1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor

has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.  Should the Plan or an alternative plan not be confirmed, the Debtor believes that Ocean Lender will be granted relief from the automatic stay provided by §362 of the Bankruptcy Code which will result in the imminent foreclosure upon the Liens on the Property under New York State law.  In the event the Bankruptcy Court does not lift the automatic stay and an alternative plan is not confirmed, the Debtor is of the view that the Case may be converted to Chapter 7.  A sale of the Property under Chapter 7 would not, in the Debtor's view, generate sufficient proceeds to satisfy all Secured Claims, Administrative Claims, and General Unsecured Claims.  To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in a Chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the Chapter 7 case.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation of the Property. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

After consideration of the foregoing, the Debtor believes that holders of Claims would be unlikely to receive any distribution on account of their Claims except under the Plan.

21

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor a recovery with a present value greater than the present value of the distribution which such Creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Although a liquidation analysis estimating distributions under a hypothetical liquidation of a debtor's assets is commonly submitted in support of a proposed plan, here where the debtor's assets are to be sold under a Plan and the proceeds distributed in accordance with the priority scheme established under the Bankruptcy Code and applicable non-bankruptcy law, the actual liquidation value will be established and a hypothetical analysis will serve little purpose.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. The Debtor believes that, after the sale of the estate's properties and assets (including the Property), the Debtor will not have any remaining business to administer except the distributions due under the Plan from the sale proceeds and the pursuit of collection of Causes of Action and other assets revested in the Post-Confirmation Debtor. Therefore the Debtor believes that the Plan is feasible and that confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be Confirmed if each impaired Class of Claims or Interests accepts the Plan. Classes of Claims or Interests which are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims or Interests not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of Claims or Interests that will neither receive nor retain any property under the Plan and are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

**Confirmation Without the Acceptance of Each Impaired Class.** In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court

may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of Section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. The Debtor believes that the Plan is in the best interest of all Creditors and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of Section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that under the Plan all classes of Impaired Claims and Impaired Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests with which their legal rights are intertwined, if any, and no class of Claims or Interests will receive payments or Property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule". Subject to certain exceptions, this rule, codified in Section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

## VII. EFFECT OF CONFIRMATION

### A. DISCHARGE

Except as otherwise provided in the Plan, all Persons shall be precluded and enjoined from asserting against the Debtor, and its respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided under the Plan, or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan shall be null and void and of no force and effect, regardless of whether a Proof of Claim or Proof of Interest therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims against the Debtor, or holders of Interests in the Debtor shall be precluded from asserting against the Debtor, and any of its assets or the Property or any property distributed under the Plan, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, and the Confirmation Order shall permanently enjoin all Creditors and holders of Interests, their successors and assigns, from enforcing or seeking to enforce any such Claims or Interests.

## B. RELEASES

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith from civil claims arising in connection with solicitations of acceptances of plans or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to §1125(e), as set forth in Article 10 of the Plan, neither the Debtor, nor any of their Interest Holders, officers, managers, directors, nor any of their agents or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, or any other action taken or omitted to be taken in connection with the Case or the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 10 of the Plan.

## C. INJUNCTION

Except (i) as otherwise provided in the Plan (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Estate, including the Property sold under the Plan, (ii) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under the Plan, or (iii) any Claim or Interest discharged under the Confirmation Order as against the Debtor's Property sold under the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, the entry of the Confirmation Order, shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor's property transferred under the Plan.

### D.    Revesting of Assets

Consistent with §§1123(a)(5)(A) and 1141 of the Bankruptcy Code, and except as may be otherwise provided in the Plan, title to all assets and property of the estate of the Debtor (including all Causes of Action) shall pass to, and vest in, the Post-Confirmation Debtor free and clear of all Claims, Liens, charges and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Post-Confirmation Debtor may conduct its financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in the Plan or in the Confirmation Order.

## VIII. ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the promulgation and confirmation of an alternative plan.

The Debtor believes that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a Chapter 7 liquidation.

## IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Unsecured Claim. Each holder of an Allowed General Unsecured Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Unsecured Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Unsecured Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

In the event of a distribution to Class 5 General Unsecured Claims, each Holder will recognize gain or loss upon the receipt of such pro-rata share equal to the difference, if any, between the "amount realized" by such Holder and the Holder's adjusted basis in his, her or its Allowed Unsecured Claim. Any gain or loss realized by a Holder should

constitute ordinary income or loss to her unless the Unsecured Claim is a capital asset. If an Unsecured Claim is a capital asset, and it has been held for more than one year, such Holder will realize long term capital gain or loss.

The tax consequences to Holders will differ and will depend on factors specific to each Holder, including but not limited to: (i) whether the Holder's Unsecured Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Unsecured Claim; (iv) whether the Holder is a United States person or foreign person for tax purposes; (iv) whether the Holder reports income on the accrual or cash basis method; (v) whether the Holder has taken a bad debt deduction or otherwise recognized loss with respect to an Unsecured Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## X. ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn.: Douglas J. Pick, Esq., (212) 695-6000, dpick@picklaw.net.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, at the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m. Additionally, copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case may be viewed and printed over the Internet from the Bankruptcy Court's Electronic Case Filing system at http://www.nyeb.uscourts.gov.

## XI. CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and Interest holders and strongly encourages all holders of Claims and Interests against the Debtor to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received not later than **5:00 p.m. Prevailing Eastern Time on _____, 2023.**

Dated: New York, New York
      July 22, 2023

                              Respectfully submitted,

                              **THREE NICKELS LLC**
                              Debtor-in-Possession

                By:      */s/Daniel Reifer*
                        Daniel Reifer, Managing Member

**READ AND APPROVED:**

      **PICK & ZABICKI LLP**
      Counsel to the Debtor

By:      */s/Douglas J. Pick*
      Douglas J. Pick
      369 Lexington Avenue, 12th Floor
      New York, New York 10017
      (212) 695-6000